[No. B043724. Second Dist., Div. Seven. Nov. 8, 1989.]

LEVON MINELIAN, Plaintiff and Appellant, v.
BONNIE MANZELLA, Defendant and Respondent.

458

460

COUNSEL

Rosario Perry and Marie E. Berglund for Plaintiff and Appellant.

Sonya Bekoff Molho for Defendant and Respondent.

OPINION

**WOODS (Fred), J.**—Plaintiff landlord appeals from an adverse judgment in an unlawful detainer lawsuit. In *Nourafchan v. Miner* (1985) 169 Cal.App.3d 746 [215 Cal.Rptr. 450], a decision by this division, we stated that a tenant had "the right to offset the excess rent paid during the three-year statutory period (Code Civ. Proc., § 338) within which he could bring an action based on [Santa Monica City Charter] section 1809, subdivision (a)." (*Id.,* at pp. 752-753.)

We ordered this case transferred from the appellate department of the superior court to this court and requested briefing on "the issue of the applicability of a limitation period to [a tenant's] right to an offset of rent." We conclude that given the equitable nature of such an offset, no statute of limitations applies when excess rent paid is used as an affirmative defense to an unlawful detainer action and affirm the judgment.

FACTUAL AND PROCEDURAL SYNOPSIS

On April 10, 1978, the base rent date under the Santa Monica Rent Control Charter Amendment (art. XVIII, Santa Monica City Charter, hereafter SMRCCA), appellant charged respondent $325 per month as rent for the apartment which was the subject of the unlawful detainer action here appealed. On or about April 27, 1978, appellant increased the rent, effective June 1, 1978, to $350 per month.[1]

On April 10, 1979, the voters of Santa Monica enacted the SMRCCA. All landlords were required to register their rental units within 60 days after

---

[1] Some of the background facts contained in this synopsis are based on statements in the briefs as they are not contained in the record (an engrossed settled statement) on appeal. Our task in ascertaining the facts was made more difficult by appellant's failure to include "a summary of material facts" "supported by appropriate reference to the record," as mandated by California Rules of Court, rules 13 and 15(a).

the adoption of the SMRCCA. (SMRCCA, § 1803(q).) The initial registration had to include the rent on April 10, 1979, the base rent ceiling, i.e., the rent on April 10, 1978, the address of the rental unit and other pertinent information. (SMRCCA, § 1803(q).) Appellant timely registered the property, but incorrectly listed the base rent as $350 per month, rather than the $325 charged on April 10, 1978.

After enactment of the SMRCCA, rent was frozen for 120 days; however, as of August 8, 1979, the rent had to be rolled back to the April 10, 1978, level. (SMRCCA, § 1804(a) & (b).) Appellant did not roll the rent back to the April 10, 1978, level.

Appellant raised the rent annually by $25 per month, an amount he considered fair. Some of the raises exceeded the annual percentage increase permitted by the Santa Monica Rent Control Board regulations.

In October 1985, respondent filed a petition with the Santa Monica Rent Control Board to determine the base rent for her unit. After a hearing, the hearing examiner issued a decision on November 18, 1985. The examiner ruled that the correct base rent for respondent's apartment was $325 and ordered appellant to reregister the unit within 30 days of the final board decision. No appeal was taken from this decision. Appellant did not reregister the unit until April 23, 1987. Because of a problem with that reregistration, appellant again registered the unit on June 4, 1987.

As of January 1, 1986, respondent stopped paying rent, using the excess rent previously paid to cover future rent payments.

In August 1987, appellant prepared a three-day notice to pay rent or quit, seeking rent in the sum of $5,640,[2] for the period of September 1, 1986, through July 31, 1987, at the rate of $470 per month. In August 1987, appellant filed an unlawful detainer complaint.

The trial court found that some annual increases had been improperly noticed, that the three-day notice was defective because the maximum allowable rent was $325 per month, and that respondent owed no rent because the excess rent previously paid covered all rent obligations through and including July 31, 1987.

On June 28, 1989, the appellate department of the superior court filed and certified for publication its unanimous opinion affirming the judgment.

---

[2] The sum of $5,640 is $470 for 12 months; since the unlawful detainer complaint covered 11 months, the correct sum is $5,170.

Both the trial court and the appellate department ruled that no statute of limitations applied when a tenant had been overcharged rent and used the excess amount of rent paid as an affirmative defense to an unlawful detainer action. Both lower courts considered the language in *Nourafchan* referring to the three-year statutory period of Code of Civil Procedure section 338 to be dictum and, therefore, not binding precedent.

On August 10, 1989, pursuant to California Rules of Court, rule 62(a), we ordered the matter transferred to this court to secure uniformity of decision and to settle important questions of law.

DISCUSSION

On appeal, appellant contended that Civil Code section 1947.7[3] applied to the facts of this case and that under *Nourafchan* v. *Miner, supra,* 169 Cal.App.3d 746, excess rent payments by a tenant might be offset against rent owing only to the extent that the payments were made within three years prior to the three-day notice.

I. *Civil Code Section 1947.7 Is Unavailable to Appellant in the Instant Case*

■ We agree with the appellate department's determination that Civil Code section 1947.7 is unavailable to the appellant in the instant case in view of the existence of substantial evidence that appellant failed to substantially comply with the SMRCCA. ■ ■ Accordingly, we adopt the following language from the appellate department's opinion: "Our review of the facts in the record persuades us that appellant was not in substantial compliance with the terms of the SMRCCA. Appellant failed to register respondent's unit with the correct base rent as required by the SMRCCA,

[3] In relevant part, Civil Code section 1947.7 (appellant refers to this section as the Petris Act, but we are unable to find any official designation using this term so we will refer to it by code section) provides that: "(b) An owner of a residential rental unit who is in substantial compliance with an ordinance or charter that controls or establishes a system of controls on the price at which residential rental units may be offered for rent or lease and which requires the registration of rents, or any regulation adopted pursuant thereto, shall not be assessed a penalty or any other sanction for noncompliance with the ordinance, charter, or regulation.

"Restitution to the tenant or . . . shall be the exclusive remedies which may be imposed against an owner of a residential rental unit who is in substantial compliance with the ordinance, charter, or regulation.

" 'Substantial compliance,' as used in this subdivision, means that the owner of a residential rental unit has made a good faith attempt to comply with the ordinance, charter, or regulation sufficient to reasonably carry out the intent and purpose of the ordinance, charter, or regulation, but is not in full compliance, and has, after receiving notice of a deficiency from the local agency, cured the defect in a timely manner, as reasonably determined by the local agency."

charged a $25 rental increase each year (disregarding the percentage increases allowed by the SMRCCA) and failed to comply with the Rent Control Board's order to re-register the unit with the correct base rent for over one year. We find substantial evidence supporting the trial court's finding that appellant had not made a good faith attempt to comply with the terms of the SMRCCA.[1]

" 'In reviewing for substantial evidence, we look at the evidence in support of the successful party, disregarding the contrary showing. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925; [9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278 et seq., p. 289 et seq.].) All conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; 9 Witkin, *supra*, § 278, p. 289.) Weight of the evidence must be disregarded. (*Estate of Teel* (1944) 25 Cal.2d 520, 527.)' (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636.)"

The appellate department's footnote 1 provides: "Since we agree with the trial court that appellant did not substantially comply with the terms of the SMRCCA, we need not address appellant's arguments that the Petris Act preempted conflicting provisions of the SMRCCA, and that not allowing appellant to retain the sums constituting general adjustments to the base rent violated the Petris Act."

We need not and do not address the issue of whether or not allowing a tenant to withhold excess rent would be a penalty or sanction proscribed by Civil Code section 1947.7 had the trial court found that appellant was in substantial compliance with the SMRCCA since the trial court found no substantial compliance with Civil Code section 1947.7.

II. *There Is No Statute of Limitations to the Right to an Offset for Unlawful Excess Rent Already Paid When Used as an Affirmative Defense to an Unlawful Detainer Action*

When we ordered the case transferred to this court, we requested briefing on "the issue of the applicability of a limitation period to [a tenant's] right to an offset of rent."

The Supreme Court has held that: "the statutory remedies for recovery of possession and of unpaid rent [citations] do not preclude a defense based on municipal rent control legislation enacted pursuant to the police power imposing rent ceilings and limiting the grounds for eviction for the purpose of enforcing those rent ceilings." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 149 [130 Cal.Rptr. 465, 550 P.2d 1001].)

Citing *Birkenfeld,* in *Nourafchan* v. *Miner, supra,* 169 Cal.App.3d 746, we stated that the narrow issue before us was whether a defendant could raise SMRCCA section 1805, subdivision (h),[4] as a defense in an unlawful detainer action for failure to pay rent. (*Id.*, at p. 752.) We concluded that such a defense could be raised. (*Ibid.*)

In *Nourafchan,* we stated that: "Because defendant had been paying unlawfully excessive rent [because the landlord failed to roll back the rent to the base rent] following the effective date of the charter amendment, defendant was entitled to claim as an affirmative defense the right to offset the excess rent paid *during the three-year statutory period (Code Civ. Proc., § 338) within which he could bring an action based on section 1809, subdivision (a).*" (Italics added.) (169 Cal.App.3d at pp. 752-753.) It was to clarify this reference to a statute of limitations that we ordered this matter transferred to this court. As discussed in this opinion, to the extent that the aforementioned reference to a statute of limitations in *Nourafchan* is capable of being interpreted as a holding that the right to offset improper rent paid as an affirmative defense in an unlawful detainer action, is limited by the time constraints of section 338 of the Code of Civil Procedure, we disapprove of it.

Since there does not appear to have been any briefing, argument, or issue raised concerning the applicability of a statute of limitations to the excess rent defense in *Nourafchan* (thereby making this court's comments obiter dictum), we will reconsider that portion of *Nourafchan.* (*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 358 [261 Cal.Rptr. 318, 777 P.2d 91]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 806-807, pp. 785-787.)

In order to put the issue of a statute of limitations in its proper perspective, we will discuss affirmative defenses to unlawful detainer actions. In the early years of this century, the Supreme Court noted that counterclaims and setoffs are not available in unlawful detainer actions for the reason that under the code (Code Civ. Proc., § 1161), upon the failure of a tenant to pay rent or perform other covenants of the lease before the expiration of the three days' notice, the lease becomes forfeited, and the tenant's subsequent possession of the premises is unlawful. (*Arnold* v. *Krigbaum* (1915) 169 Cal. 143, 146 [146 P. 423] impliedly disapproved on another point in *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 623 [111 Cal.Rptr. 704, 517 P.2d 1168].)

---

[4]In relevant part, SMRCCA section 1805, subdivision (h) provides that: "No landlord shall increase rent under this Article if the landlord:

"(1) Has failed to comply with any provision of this Article and/or regulations issued thereunder by the Board, . . ."

Noting that the recovery of rent is a mere incident to the recovery of possession, the Supreme Court concluded that a tenant may show that there was no forfeiture because there was no breach of the covenants of the lease. (169 Cal. at p. 146.) Thereafter, the Supreme Court reasoned that: "If, *by reason of dealings between them prior to the alleged forfeiture, the rent was paid or discharged at that time,* [the tenant] may show that fact, and in that way questions of contractual relations may properly arise in such an action." (Italics added.) (169 Cal. at p. 146.)

■ We must also keep in mind the principle that: "the law abhors forfeitures, and will strictly construe forfeiture provisions against the party in whose behalf they are invoked. (Civ. Code, § 1442.)" (*Deutsch* v. *Phillips Petroleum Co.* (1976) 56 Cal.App.3d 586, 592 [128 Cal.Rptr. 497, 92 A.L.R.3d 960].)

Noting the changing times, the Supreme Court later reasoned that defenses which go to the issue of possession can be raised in an unlawful detainer action. (*Green* v. *Superior Court* (1974) 10 Cal.3d 616, 633, fn. 19 [111 Cal.Rptr. 704, 517 P.2d 1168].) Case law has clarified the type of defenses which can be raised in an unlawful detainer action.

■ "The purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property when a *tenant fails to pay the rent* or refuses to vacate the premises at the end of his tenancy. If a defendant were allowed to assert affirmative defenses or cross-claims which were *irrelevant to the right of immediate possession,* the summary character of the proceedings would be lost. A defense which 'arises out of the subject matter' of the original suit, and, thus, is permitted in the usual case, is normally excluded in an unlawful detainer if the defense is extrinsic to the issue of possession. [Citation.] This does not mean the defendant may not present any defense; rather, he may only assert those defenses which, if proven, would either *preserve his possession* as a tenant or preclude the landlord from recovering possession. [Citation.]" (Italics added.) (*Nork* v. *Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 413 [140 Cal.Rptr. 734].)

■ "There are two major exceptions to the rule that affirmative defenses or cross-claims may not be asserted in an action for unlawful detainer. The first includes instances where the tenant had vacated the premises before the complaint is filed. . . . The second exception allows the court to examine equitable considerations." (73 Cal.App.3d at p. 413.)

" 'Equitable principles apply in this state . . . where a forfeiture is sought in an action in unlawful detainer.' " (*Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242, 249 [22 Cal.Rptr. 309].)

■ The *Nork* court lists a number of examples of equitable defenses, supported by case citations, which can be raised in an unlawful detainer suit. Generally, these defenses fall into the categories of challenging the existence of the landlord-tenant relationship and improper acts on the part of the landlord. (*Nork* v. *Pacific Coast Medical Enterprises, Inc., supra,* 73 Cal.App.3d 410, 414.) Finally, the court noted that: "In addition, a tenant *could always· allege he had, in fact, paid the rent* or had left a security deposit . . . ." (Italics added.) (*Ibid.*)

■ Under the SMRCCA, a tenant pays excess rent when a landlord charges a rent which exceeds the maximum allowable rent. (SMRCCA, §§ 1804-1805.) Accordingly, the affirmative defense of excess rent paid can be defined either as constituting a claim that the tenant has already paid the rent or as an exception to the prohibition against affirmative defenses in unlawful detainer actions since the defense is predicated on an improper act of the landlord, i.e., collecting an unlawful amount of rent.

Another component of cases involving excess rent is the issue of whether the landlord requested an illegal amount of rent in the three-day notice. As we observed in *Nourafchan*, " '[a] notice to pay rent or quit which over-states the rent due is ineffective and will not support an action for unlawful detainer.' " (*Nourafchan* v. *Miner, supra,* 169 Cal.App.3d 746, 753.)

For instance, in the instant case, the trial court found that appellant's three-day notice was defective in that it requested an unlawful amount of rent. The three-day notice requested back rent at the rate of $470 per month. In addition to the mathematical error in the sum demanded (see *ante*, fn. 2), in November 1985, the Santa Monica Rent Control Board determined that the base rent for respondent's apartment was $325 per month and ordered appellant to reregister the unit. Appellant did not properly register respondent's unit until June 1987. Appellant's failure to register the unit with the proper base rent meant that under SMRCCA section 1804(h)(1), appellant could not increase respondent's rent without violating the local ordinance.

Accordingly, the trial court properly found that the maximum allowable monthly rent on respondent's apartment was $325, not $470. Appellant does not contest that finding. Without a determination by the trial court of the amount of excess rent paid by the tenant, it would be difficult and indeed highly improbable that a landlord could state the correct amount of rent due in a notice to pay rent or quit.

■■■■ ■ In deciding whether or not to apply a statute of limitations to an affirmative defense based on the past payment of excess

rent, we are mindful that the fundamental wrongdoer[5] in this situation is the landlord who failed to comply with the rent control law by registering the unit with the wrong base rent, imposing illegal increases beyond those allowed by the ordinance, failing to timely reregister the unit as ordered to do so by the rent control board, and apparently still charging respondent an unlawful rent as reflected in the three-day notice.

■ As conceded by appellant, in order to have a judicial determination of the exact excess rent collected, a landlord should file a declaratory relief action. Such an action is equitable in nature. (*Kroepsch* v. *Muma* (1969) 272 Cal.App.2d 467, 475 [77 Cal.Rptr. 348].)

■ *Kroepsch* involved an analogous situation in which the plaintiff buyer brought an action for declaratory relief seeking a setoff against the purchase price of certain real property on the ground that the defendant seller had permitted the subject property to become encumbered. (272 Cal.App.2d at pp. 470-471.) After noting that the doctrine of setoff is an equitable doctrine (*id.*, at p. 474), the court held that "the statute of limitations has no application to setoff claims of an equitable nature based upon the same series of transactions." (*Id.*, at p. 475.)

The *Kroepsch* court concluded that: "As long as the obligation to pay the purchase price for the property exists, the right to claim setoff against the original seller, whose wrongful conduct permitted the property to become encumbered, would continue." (272 Cal.App.2d at p. 475.)

It is obvious that respondent's payment of rent to appellant involves the same series of transactions. We conclude that although based upon a statute, the affirmative defense for excess rent paid is a setoff in the nature of an equitable defense; accordingly, we agree with the appellant department's holding that "as long as respondent's obligation to pay rent exists, her right to claim setoff against appellant, whose wrongful conduct resulted in her overpayment of rent, will continue."

In upholding the right of a city to enact a rent control law and limit a landlord's right to evict tenants, the Supreme Court reasoned that the limitation "is a reasonable means of enforcing rent ceilings by preventing landlords from putting out tenants because of their unwillingness to pay illegal amounts of rent or their opposition to applications for increases in rent ceilings." (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129, 148.)

Noting that minor violations can freeze the maximum lawful rate of rent, appellant argues that recognizing a tenant's right to withhold excess rent

---

[5] A maxim of jurisprudence is that: "No one can take advantage of his own wrong." (Civ. Code, § 3517.)

will permit tenants to sit on their rights and provide tenants with a windfall as a minor unlawful charge could prohibit a landlord from increasing the rent. Even without considering the argument of the possibility of the landlord's substantial compliance (Civ. Code, § 1947.7) with the SMRCCA should only a minor violation be involved, our holding places the burden on the landlord, where it properly belongs, to ensure that only the lawful amount of rent is charged.

Thus, rent ceilings can be enforced and landlords can be prevented from dispossessing tenants who have already paid an unlawful amount of rent. Our holding is especially apt given the purpose of the SMRCCA to prevent unreasonable increases in rents and to ensure that landlords receive no more than a fair return on their rentals. (SMRCCA, § 1800.)

In arguing that tenants will sit on their rights, appellant assumes that tenants know that they are paying excess rent. We can envision situations similar to the instant case[6] in which the tenant does not know that she has been paying unlawful rent until some event transpires which brings the error to the attention of the tenant.

In Santa Monica, a tenant who has paid excess rent has a choice of remedies, each of which has different benefits and burdens. One, the tenant can file a civil suit for the excess rent, including possible treble damages,[7] and fees and costs. (SMRCCA, § 1809(a).) Two, the tenant can file an administrative complaint with the rent control board for damages and up to $500 for costs and expenses. (SMRCCA, § 1809(b).) Third, the tenant can raise the *Nourafchan* defense of a landlord's noncompliance with provisions of the SMRCCA as an affirmative defense to an unlawful detainer action.

Recently, in concluding that although the Santa Monica Rent Control Board could administratively determine an issue of excess rent collected without invoking an unconstitutional use of judicial power, the Supreme Court held that the board's order in this instance authorizing a tenant to withhold future rent violated the "principle of check" (the avoidance or minimizing of unchecked power) in that allowing the withholding of such future rent denied the landlord an opportunity for judicial review. (*McHugh* v. *Santa Monica Rent Control Bd., supra,* 49 Cal.3d 348, 353, 374-377.)

Accordingly, permitting a tenant to raise the affirmative defense of excess rent paid in an unlawful detainer action will provide the judicial review

---

[6] It is unclear from the record how respondent discovered that she was paying an unlawful amount of rent, only that she filed an administrative complaint, the result of which was a determination that her unit was registered with the incorrect base rent.

[7] As treble damages are a penalty, they could only be recovered for a one-year period. (*G.H.I.I.* v. *MTS, Inc.* (1983) 147 Cal.App.3d 256, 278-279 [195 Cal.Rptr. 211, 41 A.L.R.4th 653].)

(favored by our Supreme Court) necessary to the determination of whether or not excess rent was paid.

## DISPOSITION

The judgment of the municipal court is affirmed. Respondent to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied December 6, 1989, and appellant's petition for review by the Supreme Court was denied February 15, 1990.