[No. B101290. Second Dist., Div. Three. Aug. 22, 1997.]

PETER SEGO et al., Plaintiffs and Appellants, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and
Respondent.

**COUNSEL**

Harold E. Griffin for Plaintiffs and Appellants.

Anthony A. Trendacosta for Defendant and Respondent.

### OPINION

### ALDRICH, J.—

#### INTRODUCTION

Appellant landlords challenge a local rent control board's refusal to issue a requested certificate of permissible rent. The landlords seek the information for purposes of resolving a rent dispute with a tenant. The tenant has ceased paying rent. Without the requested information, the landlords are unable to bring an unlawful detainer action and under the applicable local rent control regulations they have no adequate remedy available.

We find the Petris Act, Civil Code section 1947.8, requires the local agency to provide the requested certificate.

Petitioners and appellants Peter Sego and Gisele Legrand (appellants) appeal from an order which denied their petition for writ of mandate pursuant to Code of Civil Procedure section 1085. Appellants are the owners of an eight-unit apartment building in Santa Monica, California. They contend (1) the trial court committed prejudicial abuse of discretion by refusing to enforce the duty of respondent Santa Monica Rent Control Board (the Board) to issue a certificate of permissible rent levels required by the Petris Act (Civ. Code, § 1947.8, subd. (c)); (2) it was reversible error to uphold the Board's requirement that appellants sign a document under penalty of perjury alleging compliance with various laws as a condition of receiving a rent certification; and (3) the trial court committed reversible error by incorrectly interpreting *Minelian v. Manzella* (1989) 215 Cal.App.3d 457 [263 Cal.Rptr. 597].

Finding appellants' contentions meritorious, we reverse and remand to the trial court with direction to issue the writ.

#### FACTUAL AND PROCEDURAL BACKGROUND

Appellants' apartment building, located in the City of Santa Monica, is subject to the provisions of the Santa Monica Rent Control Charter Amendment (Santa Monica City Charter, art. XVIII) (SMRCCA).[1] Rents were rolled back to the level in effect a year prior to adoption of the law. The reference point from which fair rents are to be adjusted upward or downward is the rent in effect on April 10, 1978. (§ 1804(a) and (b).)

On November 9, 1995, appellants petitioned the superior court for a writ of mandate and filed a motion for a peremptory writ, directing the

---

[1]Hereinafter, references to the SMRCCA shall be to the section number only.

respondent Board to issue a certificate of permissible rent levels, pursuant to Civil Code section 1947.8, subdivision (c). According to the allegations of the petition, on or about May 1, 1995, the tenant of one of the units in appellants' apartment building, real party in interest Bernard Mack (tenant), ceased making rent payments for his unit. Appellants filed an unlawful detainer action in municipal court but dismissed it after the tenant, through his attorney, provided documentation that the tenant had paid "excess rent" to appellants in violation of the rent control law.

Appellants reviewed the information of the tenant's complaint and discovered that they had made a calculation error prior to March 1987, which resulted in a rent overcharge of about $4 per month at that time. Civil Code section 1947.8 provided for the initial certification of permissible rent levels in 1987. (Appellants do not allege they obtained this certification or if they did what the amount was.) Upon further review of their records, appellants determined that between March 1987 and April 1995 they had collected excess rent during certain months, but the tenant's "sporadic and inconsistent rent payments during the same period of time had offset all excess rent claims." A dispute exists between the tenant and appellant landlords. The tenant takes the position that beginning on the date excess rent was first collected all general rent adjustments from September 1986 to the present are void, and claims as much as $4,005 in excess rent. With the aid of a paralegal, appellants hand delivered a letter to the Board's senior attorney, Anthony Trendacosta, on September 17, 1995, requesting the Board settle the excess rent dispute. They received no response, so on October 6, 1995, appellants retained an attorney who prepared a letter to the Board requesting the Board send a certification of permissible rent levels pursuant to Civil Code section 1947.8, subdivision (c) and/or settle any excess rent dispute pursuant to section 1809(c) of the SMRCCA. Again they received no response.

Appellants' petition for writ of mandate requested an order compelling the Board to issue a certificate of permissible rent levels as required by Civil Code section 1947.8, subdivision (c) and to proceed in the manner required by that provision "to resolve any rent disputes concerning the lawful rent level."

The Board opposed the motion for a peremptory writ. The Board contended that appellants were seeking to circumvent a tenant's due process rights by seeking an order pursuant to Civil Code section 1947.8, subdivision (c). According to the Board, a tenant who claims that he or she has been overcharged in violation of the SMRCCA has three options available: The tenant (1) may file an excess rent complaint with the Board for an adjudication; (2) may withhold rent pursuant to the decision in *Minelian* v.

*Manzella, supra,* 215 Cal.App.3d 457; or (3) may file a civil action for damages. The Board also contended that a petition for a writ of mandate was inappropriate because appellants wished to resolve a factual and legal dispute which requires the Board to exercise its discretion and the tenant had already availed himself of a remedy which precludes any action by appellants.

At the hearing on the writ petition, tenant's counsel appeared as well as counsel for the Board and appellants. The Board and tenant's counsel stated that under SMRCCA there was no method by which a landlord could initiate a procedure to establish the appropriate level of rent, except the initial "base rent" determination. According to counsel, any subsequent determination would involve the issue of whether or not the owner was in substantial compliance with the rent control law because rent increases are not permitted if the landlord is not in compliance.

Appellants explained that there was no rent being paid and the parties disagreed as to the amount of permissible rent. Appellants were unable to allege the correct amount of rent due in an unlawful detainer action, and such an action would likely subject them to a retaliatory eviction claim. There had been threats of malicious prosecution actions by tenants and tenants' lawyers.

Based upon representations by the Board's counsel that there were no available administrative procedures for appellants to pursue, the superior court denied the motion for peremptory writ and denied the petition for writ of mandate. The superior court concluded that, once a tenant has begun to withhold rent, the procedure proposed by the landlord is incorrect and unavailable. The landlord's only options at that point are to either file an unlawful detainer action or an action for declaratory relief. The superior court also stated that if the landlord files an unlawful detainer action, the tenant is estopped from alleging retaliatory eviction as a defense.

Appellants appeal the denial of the writ petition.

## CONTENTIONS

Appellants contend: (1) The trial court committed a prejudicial abuse of discretion by refusing to enforce the respondent's duty to issue a certificate of permissible rent levels as required by Civil Code section 1947.8, subdivision (c) known as the Petris Act; (2) it was reversible error for the trial court to uphold respondent's requirement that appellants sign a document under penalty of perjury alleging compliance with various laws as

a condition of receiving a rent certification; and (3) the trial court committed reversible error by incorrectly interpreting the Court of Appeal's decision in *Minelian* v. *Manzella, supra*, 215 Cal.App.3d 457.

The Board contends: (1) The Petris Act's postcertification process set forth in Civil Code section 1947.8, subdivision (c) is not intended to resolve excess rent complaints; (2) the trial court correctly applied this court's decision in *Minelian* v. *Manzella, supra*, 215 Cal.App.3d 457; and (3) a writ of mandate pursuant to Code of Civil Procedure section 1085 is inappropriate where the alleged mandated act involves a moot issue.

We agree with appellants.

## DISCUSSION

### 1. *Writ of Mandate*

■ "Code of Civil Procedure section 1085 authorizes a trial court to issue a writ of mandate 'to compel the performance of an act which the law specifically enjoins . . . .' Mandamus is brought upon verified petition of a beneficially interested party. (Code Civ. Proc., § 1086.) 'These terms translate into a two-sided requirement for mandamus: "[T]here must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty." ' (*City of Gilroy* v. *State Bd. of Equalization* (1989) 212 Cal.App.3d 589, 607 . . . .) Finally, this extraordinary writ 'must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.)" (*Timmons* v. *McMahon* (1991) 235 Cal.App.3d 512, 517-518 [286 Cal.Rptr. 620].)

Appellants seek an order that the Board perform its duty as prescribed by the Petris Act to provide them with a certificate of permissible rent levels. Appellants have no other avenue available to obtain this information specifically required by state law. The Board failed to respond to the landlords' requests, even when advised that a writ would be sought if necessary, and failed to inform them of the proper procedure to obtain this information, if that was the Board's position, or inform them of other remedies which might have been available to the landlords under the SMRCCA.

■ "While mandamus will not lie to compel governmental officials to exercise their discretionary powers in a particular manner, it will lie to compel them to exercise them in some manner. . . ." (*Los Angeles County Employees Assn., Local 660* v. *County of Los Angeles* (1973) 33 Cal.App.3d 1, 8 [108 Cal.Rptr. 625], citation omitted.)

## 2. *The Petris Act*

In 1986, the California Legislature adopted Civil Code sections 1947.7 and 1947.8, authored by Senator Nicholas Petris. (1986 Stats., ch. 1199, p. 4249 et seq.; the Petris Act).

Civil Code section 1947.7 states, in part, ". . . it is the intent of the Legislature to limit the imposition of penalties and sanctions against an owner of residential rental units where that person has attempted in good faith to fully comply with the regulatory processes." (Civ. Code, § 1947.7, subd. (a).)

Civil Code section 1947.7, subdivision (b), provides: "An owner of a residential rental unit who is in substantial compliance with an ordinance or charter that controls or establishes a system of controls on the price at which residential rental units may be offered for rent or lease and which requires the registration of rents, or any regulation adopted pursuant thereto, shall not be assessed a penalty or any other sanction for noncompliance with the ordinance, charter, or regulation. [¶] . . . [¶] 'Substantial compliance,' as used in this subdivision, means that the owner of a residential rental unit has made a good faith attempt to comply with the ordinance, charter, or regulation sufficient to reasonably carry out the intent and purpose of the ordinance, charter, or regulation, but is not in full compliance, and has, after receiving notice of a deficiency from the local agency, cured the defect in a timely manner, as reasonably determined by the local agency."

Additionally, Civil Code section 1947.7, subdivision (c) provides for the prospective restoration of annual rent adjustments which may have been denied during the period of an owner's noncompliance once the owner is in compliance.

Civil Code section 1947.8, subdivisions (a) and (b) provide, "If an ordinance or charter . . . establishes a system of controls on the price at which residential rental units may be offered for rent or lease and requires the registration of rents, the ordinance or charter, or any regulation adopted pursuant thereto, *shall provide for the establishment and certification of permissible rent levels for the registered rental units, and any changes thereafter to those rent levels,* by the local agency as provided in this section. [¶] . . . Upon the request of the landlord or tenant, the local agency *shall provide* the landlord and the tenant with a certificate or other documentation reflecting the permissible rent levels of the rental unit. . . ." (Italics added.)

The initial certification process was to be completed by January 1, 1988. (Civ. Code, § 1947.8, subd. (b).)

After the initial certification, Civil Code section 1947.8, subdivision (c) continues the requirement that the local agency provide a certificate of the permissible rent levels thereafter upon request. "After the establishment and certification of permissible rent levels under subdivision (b), the local agency shall, upon the request of the landlord or the tenant, provide the landlord and the tenant with a certificate of the permissible rent levels of the rental unit. The certificate shall be issued within five business days from the date of request by the landlord or the tenant. The permissible rent levels reflected in the certificate shall, in the absence of intentional misrepresentation or fraud, be binding and conclusive upon the local agency unless the determination of the permissible rent levels is being appealed. The landlord or the tenant may appeal the determination of the permissible rent levels reflected in the certificate. Any appeal of a determination of permissible rent levels as reflected in the certificate, other than an appeal made pursuant to subdivision (b), shall be filed with the local agency within 15 days from issuance of the certificate. The local agency shall notify, in writing, the landlord and the tenant of its decision within 60 days following the filing of the appeal."

Civil Code section 1947.8, subdivision (e) provides: "The absence of a certification of permissible rent levels shall not impair, restrict, abridge, or otherwise interfere with . . . [¶] (1) A judicial or administrative hearing."

According to the author of the legislation, the bill was intended to remedy two problems which occurred with great frequency since the enactment of the Berkeley rent stabilization ordinance: "First, the author states that many landlords have been required to pay excessive fines for noncompliance where they have tried to comply with the ordinance, 'but because they are not professionals in the field, they did not register correctly or did not fill in all the blanks.' . . . [¶] . . . [T]his bill is also intended to address a complaint by landlords that proper rent levels are often difficult to establish and that any mistake may subject the owner to severe penalties. Therefore, this bill provides that any rent control law which requires the registration of rents must provide for the establishment and certification of permissible rent levels. It is argued that this provision will result in greater certainty in the process, help reduce the number of rent disputes, and enhance the ability to sell rental property since a seller will be able to inform a buyer of the legal rent level." (Sen. Bill No. 2580, as amended Aug. 26, 1986, 3d Assem. reading.)

The Board contends that its procedures for certification of permissible rents required by the Civil Code are set forth in Board regulation 13005 for the initial rent certification process, which includes factfinding hearings.

However, the Board asserts, the postcertification process of Board regulation 13007 ". . . is designed solely as a means of calculating the current rent 'of record' based upon the certification plus any annual or individual rent adjustments authorized pursuant to the local ordinance, charter or regulation." The Board insists this "ministerial process" complies with the Petris Act.

 We find the Board's regulations do not comply with the dictates of the Petris Act. First, there is no provision for appeals as required by Civil Code section 1947.8, subdivision (c).[2] Second, the SMRCCA prohibits the issuance of a certificate in cases in which the landlord cannot declare under penalty of perjury that he or she is in compliance, contrary to the purpose of the act.

Furthermore, the Petris Act does not require substantial compliance as a precondition to the issuance of a certificate. Substantial compliance is another matter, which only arises if and when the Board intends to impose sanctions or penalties against the landlord. To the extent of noncompliance with the requirements of the Petris Act, the regulations are invalid.

Appellants seek a remedy based upon Civil Code section 1947.8, subdivision (c). The requirements of the statute are mandatory. The Board's refusal to respond to the request of the landlord is contrary to state law and an abuse of discretion. The Board has failed to provide the required procedures for certification of permissible rents, which must include administrative appeal rights and which would thereby provide landlords and tenants with judicial review by means of a petition for writ of administrative mandamus.

### 3. *The SMRCCA Provisions*

The SMRCCA provides for citywide automatic annual increases to compensate owners for increases in taxes, utilities and maintenance expenses. (§ 1805(b).)

Either landlord or tenant may petition the Board to adjust the maximum rent upward or downward on an individual basis. (§ 1805(c).) A hearing is held by a hearing examiner or the Board. (§ 1805(d)(1) and (13).) The

---

[2]Contrary to the Board's position, there is nothing in the Petris Act which suggests that the landlord's and tenant's appeal rights are limited to the initial certification process. Indeed, the statutory language suggests otherwise. Civil Code section 1947.8, subdivision (c), refers to "[a]ny appeal of a determination of permissible rent levels as reflected in the certificate, *other than an appeal made pursuant to subdivision (b)* [which requires the initial certification]. . . ." (Italics added.)

hearing examiner's decision may be appealed to the Board, which may conduct a de novo hearing. (§ 1805(d)(13).)

A landlord is prohibited from increasing rent if the owner is not in compliance with *any* provision of SMRCCA or its regulations, including the collection of excess rent. (§ 1805(h)(1) and (2).)

Section 1805(h)(2) in part provides: "If a landlord fails to comply with this subsection, the tenant may refuse to pay the improperly noticed increase, may seek administrative or civil remedies under this Article, and may raise the landlord's noncompliance as an affirmative defense in any resulting unlawful detainer action."

In addition, section 1809(a) allows the tenant to bring a civil action for damages plus a penalty of treble the amount of excess rent, with no requirement that the tenant exhaust administrative remedies. Section 1809(b) provides for a tenant initiated administrative complaint.

The courts have found that a tenant may properly raise section 1805(h) of the SMRCCA as a defense in an unlawful detainer action for failure to pay rent. (*Nourafchan* v. *Miner* (1985) 169 Cal.App.3d 746, 752-753 [215 Cal.Rptr. 450].) It has also been held that, although this defense is based upon a regulation, it is a setoff in the nature of an equitable defense which, as long as the tenant's obligation to pay rent exists, is not subject to the statute of limitations. (*Minelian* v. *Manzella*, *supra*, 215 Cal.App.3d at pp. 460, 467.)

The Board contends that *Minelian* v. *Manzella* applies to this case and requires denial of the petition for a writ. The Board is mistaken.

In *Minelian* v. *Manzella*, plaintiff landlord appealed from an adverse judgment in an unlawful detainer lawsuit. The court addressed the issue of the applicability of a statute of limitations to the defendant tenant's excess rent defense. In the earlier case of *Nourafchan* v. *Miner*, *supra*, 169 Cal.App.3d 746, the court held that a tenant had "the right to offset the excess rent paid during the three-year statutory period (Code Civ. Proc., § 338) within which he could bring an action based on section 1809, subdivision (a)." (169 Cal.App.3d at pp. 752-753.) The *Minelian* court reasoned that the affirmative defense for excess rent paid is a setoff in the nature of an equitable defense and as long as the tenant's obligation to pay rent exists, his or her right to claim setoff against the landlord would continue. (215 Cal.App.3d at p. 467.) Thus, no statute of limitations applies when excess rent paid is used as an affirmative defense to an unlawful detainer action.

The court in *Minelian* v. *Manzella, supra*, 215 Cal.App.3d 457, described the tenant's remedies: "In Santa Monica, a tenant who has paid excess rent has a choice of remedies, each of which has different benefits and burdens. One, the tenant can file a civil suit for the excess rent, including possible treble damages, and fees and costs. (SMRCCA, § 1809(a).) Two, the tenant can file an administrative complaint with the rent control board for damages and up to $500 for costs and expenses. (SMRCCA, § 1809(b).) Third, the tenant can raise the *Nourafchan* defense of a landlord's noncompliance with provisions of the SMRCCA as an affirmative defense to an unlawful detainer action." (215 Cal.App.3d at p. 468, fn omitted.)

The Board argues that once a tenant has "elected" the "remedy" of withholding rent, the landlord's only options are to file an unlawful detainer action or an action for declaratory relief. It contends the tenant's action renders other civil or administrative remedies "moot." We disagree.

In *Minelian*, the trial court had determined the maximum allowable monthly rental on the unit in issue based upon the SMRCCA. The appellate court explained, "Without a determination by the trial court of the amount of excess rent paid by the tenant, it would be difficult and indeed highly improbable that a landlord could state the correct amount of rent due in a notice to pay rent or quit." (215 Cal.App.3d at p. 466.) However, the fact that the unlawful detainer action in *Minelian* addressed the issue of the permissible rent based upon the SMRCCA does not compel the conclusion, urged by the Board, that a lawsuit is the *only* means by which a landlord may raise the issue for purposes of resolving a dispute with a tenant.

In regard to the issue of the applicability of Civil Code section 1947.7, the *Minelian* court found substantial evidence supported the appellate department's finding that the landlord was not in substantial compliance with the terms of the SMRCCA and therefore Civil Code section 1947.7, which precludes the imposition of a penalty, was unavailable to the landlord. Based upon that finding, the *Minelian* court expressly declined to address the issue of whether or not allowing a tenant to withhold excess rent would be a penalty or sanction proscribed by Civil Code section 1947.7. (*Minelian* v. *Manzella, supra*, 215 Cal.App.3d at p. 463.)

Although there is no question that the tenant could raise the affirmative defense that he had paid excess rent in an unlawful detainer action, once the plaintiff landlords dismiss the action and give up their efforts to regain possession, that "remedy" is no longer available. The tenant remains in possession. The tenant is not paying rent. However, there still exists a dispute between the parties regarding the correct rent and the amount of

excess rent, if any, paid in the past. And the tenant has not initiated any action and there is little incentive for him to do so, except for the treble damage possibility of section 1809(a).

The certificate of permissible rent, as determined by the Board, is an appropriate preliminary first step to the resolution of a rent dispute inasmuch as the rent is regulated by the local agency, not solely by ordinary contractual arrangements between landlord and tenant.

Furthermore, either the landlord *or* the tenant should be able to seek the relief provided by section 1805 of SMRCCA for the adjustment of rent. (See *Richman* v. *Santa Monica Rent Control Bd.* (1992) 7 Cal.App.4th 1457, 1460 [9 Cal.Rptr.2d 690].)

### 4. *Substantial Compliance*

The SMRCCA form for a landlord's request for verification of rent levels, pursuant to Board regulation 13007, and Civil Code section 1947.8, requires the owner to declare under penalty of perjury that as of the date of the request the property was in compliance with SMRCCA and in substantial compliance with applicable state or local housing, health or safety law. This requirement cannot properly be a precondition for certification of permissible rent as such a requirement conflicts with the requirements of subdivision (c) of Civil Code section 1947.7, by effectively preventing the certification in cases where the landlord cannot honestly execute such a declaration, for the very reason the landlord is uncertain of compliance with all the regulations and statutes which may apply *including permissible rent restrictions.* Accordingly, we declare the form with this condition is invalid.

Appellants did not sign the verification form but instead informed the Board of the nature of their problem. The trial court did not render an express ruling regarding the validity of the verification requirement of Board regulation 13007. Appellants contend the precondition is invalid. We agree, at least in regard to the dictates of Civil Code section 1947.8.

Pursuant to the Petris Act, the issue of "substantial compliance" only becomes relevant in determining whether or not a landlord may be assessed a penalty or sanction for noncompliance. (Civ. Code, § 1947.7, subd. (b).) Contrary to the Board's assertions, the determination of substantial compliance is within the scope of the Petris Act, as the act is designed to limit penalties and sanctions against landlords acting in substantial compliance. Also, it is not a determination which must be resolved within the five days specified in the act. The five-day requirement applies to the requirement to

issue a certificate of permissible rent, only. The issue of substantial compliance becomes relevant in the broader context of subsequent proceedings. For example, in *Richman* v. *Santa Monica Rent Control Bd.*, *supra*, 7 Cal.App.4th 1457, the court held the Petris Act did not apply to the Board's action in that case because the Board did not assess a penalty or sanction. "Had the Board somehow allowed the tenant to recover for excess rent, then the Act might have come into play." (*Id.* at p. 1465.)

Furthermore, we find the provisions of section 1805(c) are available to the landlords. The Board does not thereby necessarily resolve *all* the disputes that may exist between the landlords and tenant but it will then fulfill its responsibilities as expressed in the SMRCCA.

### 5. *The Writ Should Issue*

The Board is required by state law to provide the landlord or tenant, upon request, with a certificate of permissible rents. This requirement was designed in part to reduce disputes between landlord and tenants. The certificate provides the parties with an official interpretation of the requirements of the applicable rent control law from the entity authorized to administer the law. Such information would appear to be information vital to the resolution of the various other issues that may exist between the parties. The parties may take whatever actions they deem appropriate, based upon the information they obtain from the Board. Additionally, the landlord may invoke the prohibition of penalties if found to have been in substantial compliance. Any administrative processes invoked by the parties are subject to judicial review pursuant to Code of Civil Procedure section 1094.5, for administrative mandamus. Indeed, the establishment of the permissible rent as determined by the regulatory agency may end the dispute at that point.

### DISPOSITION

Judgment reversed. The matter is remanded to the trial court with directions to issue a writ of mandate ordering the Board to provide appellants with the requested certificate of permissible rent as required by the Petris Act. Costs awarded to appellants.

Klein, P. J., and Kitching, J., concurred.